IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| WESTCHESTER SURPLUS LINES INSURANCE COMPANY, | ) ) ) | |
| Plaintiff, | ) ) | No. 2:19-cv-02381-DCN |
| vs. | ) ) | **ORDER** |
| DART SHELTER LLC d/b/a THE SHELTER KITCHEN AND BAR and SAMANTHA L. ANTLEY, | ) ) ) ) ) | |
| Defendants. | ) ) | |

This matter is before the court on plaintiff Westchester Surplus Lines Insurance Company's ("Westchester") motion to partially dismiss defendant DART Shelter LLC's ("DART") counterclaims, ECF No. 19. For the reasons set forth below, the court grants the motion.

**I. BACKGROUND**

This declaratory judgment action arises from a state court lawsuit filed by defendant Samantha L. Antley ("Antley"). That lawsuit ("the underlying action") alleges that in September 2015, DART served Preston Yelverton ("Yelverton") alcohol even though he was visibly intoxicated. Yelverton and Antley then allegedly engaged in an altercation in which Antley was injured. As a result, Antley filed the underlying action against DART and Yelverton to recover for her injuries.

Westchester issued a Commercial General Liability policy to DART for a policy period of August 10, 2015 to August 10, 2016 ("the Policy"). The Policy has limits of $1,000,000 per occurrence/$2,000,000 aggregate. In its complaint, Westchester alleges

1

that on December 12, 2017, Antley served her amended complaint for the underlying action upon DART's owner and registered agent. No answer was filed in the underlying action, so on February 5, 2018, the state court in the underlying action entered an order of default against DART and set a hearing on damages. On March 8, 2018, allegedly unbeknownst to Westchester, DART filed a motion to set aside the entry of default and to stay the damages hearing. Then on March 14, 2018, DART's personal counsel allegedly contacted Westchester to inform Westchester that the underlying action had been filed against DART, that DART was in default, and that DART filed a motion to set aside default and to stay the damages hearing. According to Westchester, this was the first time Westchester learned of the filing of the underlying action. Westchester informed DART that there may be coverage issues but that it would assign counsel under a reservation of rights. Westchester issued a reservation of rights letter on or about March 29, 2018. The state court in the underlying action denied DART's motion to set aside default, and judgment was entered against DART in the amount of $882,025. DART filed various motions to amend or seek relief from the judgment, all of which were denied.

The allegations in DART's counterclaims tell a different version of the events at issue. DART alleges that Westchester became aware of Antley's claim on or about November 3, 2015. DART alleges that on or about October 12, 2017, a member of DART received a damages packet, letter of representation, and draft complaint ("the complaint packet") from Antley's attorney. Then on or about November 1, 2017, DART allegedly informed Westchester that Antley would be making a claim against DART. Westchester allegedly assigned a claims associate to the matter, who emailed a member

of DART on November 10, 2017 to advise that he had "been assigned to handle the above loss for [DART]" and to request a copy of the complaint packet. ECF No. 11, DART Counterclaims ¶ 69. On the same day, DART's general counsel allegedly emailed a copy of the complaint packet to Westchester.

As noted above, Antley filed her amended complaint on December 12, 2017. DART alleges that it reasonably relied on Westchester's representation that it would "handle the [Antley] loss" and reasonably expected Westchester to provide defense counsel to defend DART in the underlying action. DART Counterclaims ¶ 73. DART alleges that once Westchester became aware of DART's default, Westchester retained counsel under a reservation of rights. That counsel never filed an answer on behalf of DART, but Westchester allegedly actively attended and participated in a mediation on July 13, 2018. Westchester did not make an offer to settle Antley's claim at that time. DART also alleges that before and after the damages hearing, Westchester led DART to believe that it would pay any judgment entered against DART but that Westchester has failed to do so despite the fact that the judgment is within the Policy's coverage limits.

Westchester filed this declaratory judgment action seeking a declaration that it owes no duty to defend or indemnify DART in the underlying action. DART answered the complaint and filed counterclaims for: (1) a declaratory judgment that Westchester does owe a duty to defend and indemnify; (2) breach of contract; (3) negligence, (4) bad faith; and (5) a violation of the South Carolina Unfair Trade Practices Act ("SCUTPA"). On October 10, 2019, Westchester filed a motion for partial dismissal that seeks to dismiss DART's negligence and SCUTPA counterclaims. ECF No. 19. DART

responded on October 31, 2019, ECF No. 23, and Westchester replied on November 13, 2019, ECF No. 33. The motion is now ripe for review.

## II. STANDARD

A Rule 12(b)(6) motion for failure to state a claim upon which relief can be granted "challenges the legal sufficiency of a complaint." Francis v. Giacomelli, 588 F.3d 186, 192 (4th Cir. 2009) (citations omitted); see also Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992) ("A motion to dismiss under Rule 12(b)(6) . . . does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses."). To be legally sufficient, a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A Rule 12(b)(6) motion should not be granted unless it appears certain that the plaintiff can prove no set of facts that would support his claim and would entitle him to relief. Mylan Labs., Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993). When considering a Rule 12(b)(6) motion, the court should accept all well-pleaded allegations as true and should view the complaint in a light most favorable to the plaintiff. Ostrzenski v. Seigel, 177 F.3d 245, 251 (4th Cir. 1999); Mylan Labs., Inc., 7 F.3d at 1134. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

### III. DISCUSSION

Westchester asks the court to dismiss DART's negligence and SCUTPA counterclaims. In DART's response to Westchester's motion, DART concedes that its SCUTPA counterclaim should be dismissed. Therefore, the court dismisses DART's SCUTPA counterclaim and only considers whether DART's negligence counterclaim can survive.

DART alleges that Westchester owed DART a duty to initiate a prompt investigation and settlement of Antley's claim and to act in good faith in handling the claim. DART further alleges that Westchester breached those duties by failing to promptly investigate the claim despite timely notice, negligently representing that it would "handle the [Antley] loss" and otherwise defend DART, failing to make a reasonable settlement offer during mediation, engaging in deceptive claims handling practices, and failing to promptly respond to Antley's claim and appoint defense counsel. DART Counterclaims ¶ 96. Westchester argues that DART's negligence claim must be dismissed because Westchester had no legal duty to DART independent of the Policy, meaning DART cannot bring a tort claim arising from the Policy. DART disagrees, arguing that Westchester voluntarily undertook a duty separate from the Policy when it agreed to "handle the loss." Therefore, the question that arises is whether an insurance company can be liable to its insured for negligence by voluntarily undertaking a duty independent of its insurance policy and subsequently breaching that duty.

To state a claim for negligence, a plaintiff must allege "(1) a duty owed to the plaintiff by the defendant, (2) a breach of that duty by the defendant, and (3) damages proximately resulting from the breach of duty." Hurst v. E. Coast Hockey League, Inc.,

637 S.E.2d 560, 562 (S.C. 2006). It is within the court's province to determine if "the law recognizes a particular duty." Id. If no such duty exists, then the negligence action will fail as a matter of law. Id. "An affirmative legal duty exists only if created by statute, contract, relationship, status, property interest, or some other special circumstance." Hendricks v. Clemson Univ., 578 S.E.2d 711, 714 (S.C. 2003). "Ordinarily, the common law imposes no duty on a person to act[,]" but "[w]here an act is voluntarily undertaken . . . the actor assumes the duty to use due care." Id. South Carolina courts have adopted the concept of a voluntarily assumed duty from the Restatement of Torts, which states:

> One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other's person or things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if
>
> (a) his failure to exercise such care increases the risk of such harm, or
> (b) the harm is suffered because of the other's reliance upon the undertaking.

Restatement (Second) of Torts § 323.

Westchester argues that South Carolina courts have routinely dismissed negligence claims against insurers that are based on an insurer's failure to perform under an insurance policy. In doing so, Westchester relies, in part, on Brumbaugh v. First Fin. Ins. Co., 2014 WL 12609310 (D.S.C. July 30, 2014). In Brumbaugh, the court dismissed the plaintiff's negligence claim against an insurance company because the plaintiff, as the insured's assignee, did not allege any relationship or duty between the insurance company and the insured apart from the insurance policy. Brumbaugh, 2014 WL 12609310, at *3. However, Westchester fails to note that the court considered the

plaintiff's negligence claim again on reconsideration, during which the plaintiff argued for the first time that her negligence claim included a claim for voluntary assumption of the duty to defend. Brumbaugh v. First Fin. Ins. Co., 2014 WL 12609311, at *2 (D.S.C. Dec. 1, 2014). While the court did not reconsider its ruling on this basis, the court interpreted the plaintiff's argument as a motion to amend and permitted the plaintiff to amend her complaint to assert a negligence claim based on a voluntarily assumption of the duty to defend.

However, the next and final order in Brumbaugh analyzed and rejected the application of a voluntarily assumed duty in the case. The plaintiff amended her complaint to include a negligence claim based on a voluntarily assumed duty, and the insurance company filed a motion to dismiss. In considering whether the plaintiff's claim could survive, the court explained that "South Carolina courts have squarely addressed and refused to recognize an extension of the voluntary assumption of duty cause of action to a claim for economic loss, such as Plaintiff asserts here." Brumbaugh v. First Fin. Ins. Co., 2015 WL 12817166, at *2 (D.S.C. Mar. 17, 2015) (citations omitted). This refusal arises from the language of the Restatement, which provides that "[o]ne who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other's person or things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking." Restatement (Second) of Torts § 323 (emphasis added). In accordance with the Restatement, South Carolina courts have only recognized a voluntarily assumed duty when that duty was undertaken to prevent physical harm, not economic injury. Hendricks v. Clemson Univ., 578 S.E.2d 711, 715 (S.C. 2003); Johnson v. Robert E. Lee

7

Acad., Inc., 737 S.E.2d 512, 515 (S.C. Ct. App. 2012). The Brumbaugh court also noted that this rule of law is in line with "the majority view that a voluntary assumption of duty cause of action may not be asserted for a claim of economic loss." Brumbaugh, 2015 WL 12817166, at *2. Therefore, the court dismissed the plaintiff's claim.

The cases on which DART relies confirm this limitation on voluntarily assumed duties. In Wright v. PRG Real Estate Mgmt., Inc., the Supreme Court of South Carolina considered whether an apartment complex's owner, operator, and manager voluntarily undertook the duty to provide security for the residents of the apartment complex. 826 S.E.2d 285, 286 (S.C. 2019). The plaintiff's negligence claim arose because she was abducted and robbed at gunpoint in the common area of the apartment complex, meaning that any liability would be based on physical harm. Similarly, in Cooke v. Allstate Mgmt. Corp., a tenant of an apartment complex alleged negligence against the manager of her apartment complex when she was assaulted by an intruder who allegedly used the manager's ladder to access and gain entry to her apartment. 741 F.Supp. 1205, 1206 (D.S.C. 1990). The tenant argued that the manager breached its voluntarily assumed duty of care by improperly storing the ladder. Id. at 1209.[1] Again, the tenant in Cooke suffered from physical harm. Here, any duty that Westchester may have undertaken was not to prevent physical harm to DART. Therefore, even accepting DART's factual allegations as true, Westchester did not voluntarily assume any duty to DART that could subject Westchester to liability.

---

[1] While the court did not specifically cite to the Restatement in this case, it relied on Crowley v. Spivey, 329 S.E.2d 774 (S.C. Ct. App. 1985), to hold that "one who assumes to act, even though under no obligation to do so, may become subject to the duty to act with due care." Id. at 1209–10. Crowley supports that same proposition by citing to Section 323 of the Restatement. Crowley, 329 S.E.2d at 780.

DART's reliance on Great American Ins. Co. v. Mills, 2008 WL 2250256 (D.S.C. May 29, 2008), does not convince the court otherwise. The duty in that case was not based upon a voluntarily assumption of a duty but instead was based on an implied duty that exists when an insurance agent advises an insured. The court explained that "[g]enerally, an insurer and its agents owe no duty to advise an insured." Great Am. Ins. Co., 2008 WL 2250256, at *9 (quoting Trotter v. State Farm Mut. Auto. Ins. Co., 377 S.E.2d 343 (S.C. Ct. App. 1988)); see also Houck v. State Farm Fire & Cas. Ins. Co., 620 S.E.2d 326, 329 (S.C. 2005) ("[A]s a general rule, an insurance agent has no duty to advise an insured at the point of application, absent an express or implied undertaking to do so."). "If the agent, nevertheless, undertakes to advise the insured, he must exercise due care in giving advice." Great Am. Ins. Co., 2008 WL 2250256, at *9 (quoting Trotter, 377 S.E.2d 343). Such an undertaking can create an implied duty to advise, and courts consider various factors to determine whether an implied duty exists: "(1) [whether] the agent received consideration beyond a mere payment of the premium, (2) [whether] the insured made a clear request for advice, or (3) [whether] there is a course of dealing over an extended period of time which would put an objectively reasonable insurance agent on notice that his advice is being sought and relied on." Id. (quoting Houck, 620 S.E.2d at 329).

Here, DART does not allege that Westchester had an implied duty to advise DART. Instead, DART alleges that Westchester owed DART a duty to initiate a prompt investigation and settlement of the Antley claim and to act in good faith in handling the claim. Therefore, the law on the implied duty to advise is inapplicable here and does not save DART's negligence counterclaim as it is pled.

In the alternative, DART seeks leave to amend its negligence counterclaim to allege further detail. Westchester opposes this request, arguing that amendment would be futile. Rule 15 requires the court to "freely give leave" to amend a pleading "when justice so requires." Fed. R. Civ. P. 15(a)(2). "A motion to amend should only be denied when 'the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would be futile.'" ACA Fin. Guar. Corp. v. City of Buena Vista, Virginia, 917 F.3d 206, 217–18 (4th Cir. 2019) (quoting Edwards v. City of Goldsboro, 178 F.3d 231, 242 (4th Cir. 1999)). Here, the issue with DART's negligence claim is one based in law, not based in fact. Therefore, facts alleged in further detail would not cure the legal deficiency of the claim, meaning amendment would be futile. As such, the court denies DART's request to amend its negligence counterclaim.

In another alternative argument, DART asks that, if the court dismiss its negligence counterclaim, the court do so without prejudice so that DART can move to amend its pleadings after discovery, if needed. This request suffers from the same flaw as DART's amendment request—the court dismisses DART's negligence counterclaim on an issue of law. Any facts that come to light during discovery would not affect the legal conclusion that Westchester owed no duty to DART independent of the Policy. Therefore, the court declines to dismiss Westchester's negligence counterclaim without prejudice.

## IV. CONCLUSION

For the foregoing reasons the court **GRANTS** Westchester's motion for partial dismissal and dismisses DART's negligence counterclaim.

**AND IT IS SO ORDERED.**

DAVID C. NORTON
UNITED STATES DISTRICT JUDGE

**December 17, 2019**
**Charleston, South Carolina**